## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    :
                                            :
    *versus*                               :       CRIMINAL NO. 22-22-SDD-SDJ
                                            :
RICHARD VERRET a/k/a                        :
"Luxury187, "Miami24k,"                     :
"Faboloso_1," "Cassie Cash," and            :
"Shawn Whitenack"                           :

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and Richard Verret ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

### A.     THE DEFENDANT'S OBLIGATIONS

#### 1.     Guilty Plea

The defendant agrees to enter a plea of guilty to Count 1 of an Indictment charging him with unauthorized solicitation of access devices, in violation of 18 U.S.C. § 1029(a)(6).

#### 2.     Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to him by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court. Further, the defendant agrees to provide the United States with any information or documentation in his possession regarding his financial affairs and to submit to a debtor's examination upon request. Any financial information provided by the defendant may be used by the United States to collect any financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

**B.     UNITED STATES' OBLIGATIONS**

    **1.     Non-prosecution of Charges**

The United States agrees that, if the Court accepts the defendant's guilty plea, it will move to dismiss the remaining counts in the Indictment after the defendant's sentencing and it will not prosecute the defendant for any offense related to the offenses charged in the Indictment.

    **2.     Acceptance of Responsibility**

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level. The United States reserves the right to object to a decrease in offense level for acceptance of responsibility based on information received by the United States after the effective date of this agreement, including information that the defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

### C.     SENTENCING

#### 1.     Maximum Statutory Penalties

The maximum possible penalty on Count 1 of the Indictment is a term of imprisonment of ten (10) years and a fine of $250,000 or twice the gross gain or twice the gross loss derived from the offense, whichever is greater, and a term of supervised release of three (3) years.

In addition to the above, the Court must impose a special assessment of $100, which is due at the time of sentencing. The Court may also order restitution.

#### 2.     Supervised Release

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions. Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

#### 3.     Sentencing Guidelines

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence, the Sentencing Guidelines are not binding on the Court. The Court could impose any sentence up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

### 4. **Agreements Regarding Sentencing**

Pursuant to 18 U.S.C. § 3663(a)(3), the United States and the defendant agree that the Court shall not be limited to the count of conviction for purposes of ordering restitution. As a condition of this plea agreement, the defendant agrees that the Court will order full restitution to any and all victims identified by the United States Probation Office and determined by the Court to be victims of the scheme described in the Indictment. The defendant agrees and understands that the Court will order restitution to all such victims in amounts to be determined by the Court at or prior to sentencing.

Pursuant to U.S.S.G. § 6B1.4, the United States and the defendant further agree that the intended loss in this case, as contemplated in Section 2B1.1 of the United States Sentencing Guidelines, is more than $9,500,000 and not more than $25,000,000. The parties recognize that if application note 3(F)(i) to Section 2B1.1 is applied to the facts of this case, the application note will yield a higher intended loss figure. However, based on the specific facts and circumstances of this case, the parties agree that a sentence based on a loss figure derived from application note 3(F)(i) would overstate the seriousness of the defendant's offense, because (a) the original values of all of the account numbers unlawfully possessed by the defendant are known, and the overwhelming majority of the accounts had original values of far less than the $500 threshold set forth in the application note, and (b) a very small number of the account numbers unlawfully possessed by the defendant had no actual value at the time the defendant attempted to sell them. The defendant fully understands that the Court is not bound by this stipulation.

Otherwise, except as set forth in this agreement and the supplement to the plea agreement, the United States makes no promises, representations, or agreements regarding sentencing. In particular, the United States reserves the right to present any evidence and information to the Court and the United States Probation Office regarding sentencing.

5. **Forfeiture**

The defendant agrees to forfeit any and all property, real and personal, that constitutes or is derived from proceeds the defendant obtained directly or indirectly as a result of the scheme charged in Count 1 of the Indictment, including but not limited to a sum of money equal to the amount of the proceeds of the offense. The defendant consents to the entry of a personal money judgment against him in the amount that the Court determines represents the proceeds of his offense or was involved in the offense, and he understands that the Court may enter a personal money judgment against him in such amount. The defendant also agrees to forfeit any and all personal property used or intended to be used to commit the offense.

The defendant understands that forfeiture of his property will not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon him as part of his sentence. The defendant further understands that, separate and apart from his sentence in this case, the United States may also institute civil or administrative forfeiture proceedings of any property, real or personal, which is subject to forfeiture.

The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets and to fully and completely assist the United States in the recovery and forfeiture of all forfeitable assets, including taking all steps as requested by the United States to pass clear title to forfeitable assets to the United States. The defendant agrees to hold the United States, its agents,

and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders.

The defendant hereby waives the following: (1) all statutory and constitutional defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R. Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and determine that the defendant understands, the applicable forfeiture prior to accepting the defendant's plea.

**D.  FACTUAL BASIS**

The United States and the defendant stipulate to the following facts:

**Background**

At all relevant times, the defendant, Richard Verret, a/k/a "Luxury187" and "Miami24k," was a resident of Quebec, Canada. The defendant operated and controlled several websites, such as the "Lux Giftcards Shop" and "Miami's Gift Card Shop," through which he advertised the sale of gift cards for major restaurant chains, grocery stores, entertainment venues, and other retail business chains (collectively, the "businesses"). Many of the businesses whose gift cards were advertised on his websites had locations across Louisiana, including within the Middle District of Louisiana.

**The Criminal Scheme**

Beginning on a date uncertain, but no later than in or about 2018, and continuing until early 2022, the defendant would obtain, by fraudulent methods and theft, large quantities of account numbers for valid gift cards that had been issued by the businesses. Once in possession of the account numbers, the defendant could spend the gift card balances or share them with associates, but the defendant's ultimate goal was to unlawfully enrich himself by re-selling the gift card account numbers without the knowledge, consent, or authorization of the businesses or their customers.

To accomplish his goals, and to be able to offer and sell access devices, the defendant used the following manner and means, among others:

a. The defendant would identify known, active account numbers for gift cards issued by the businesses, identify large populations of additional numbers that had been issued by the same retailers, and then determine whether the numbers he had obtained had associated balances that could be used and spent. Because the account numbers could be loaded into mobile applications and scanned at store registers, used for online purchases, and/or re-programmed onto blank access devices, the defendant and others could access the account balances and spend the funds without ever having actual, physical possession of the original, legitimate gift cards.

b. When interacting with the businesses' websites, the defendant would conceal his identity and take other steps to circumvent the websites' security measures.

c. Because the defendant had obtained the account numbers without the knowledge, consent or authorization of the gift cards' issuers or actual owners, he concealed his true identity from individuals who visited his websites and offered the gift cards for sale at steep discounts. For instance, the defendant would offer gift cards to a major gourmet supermarket chain, having a face value of $25 each, for just $5, and the defendant would offer gift cards to a furniture store, having a face value of $1,000, for $250.

d. At the defendant's websites, upon placing an order, a purchaser would generally receive instructions via e-mail directing him or her to send payment to a PayPal account controlled by the defendant. After sending payment, the purchaser would receive an e-mail containing account numbers for the gift cards that he or she had just purchased.

e. The defendant used various methods to conceal his identity and avoid detection, including cycling through numerous e-mail and PayPal accounts, which he often opened in the names of aliases.

The defendant's websites, which were accessible in the Middle District of Louisiana and elsewhere, often advertised that they offered gift cards to hundreds of different businesses and that the sites were adding more gift cards "every week." As of late February 2022, one of the websites offered more than 550,000 gift cards to more than 500 different businesses. The total stored value of all of the fraudulently obtained accounts being offered for sale was more than $22 million.

### Count 1

Accordingly, the defendant's scheme involved the unauthorized solicitation of access devices. That is, the defendant knowingly and with intent to defraud solicited individuals in Baton Rouge, Louisiana and elsewhere with the purpose of offering and selling access devices, without the authorization of the issuers of the access devices, and his conduct affected interstate and foreign commerce. For instance, as described in Count 1 of the Indictment, on or about July 17, 2019, the defendant advertised, sold, received payment, and distributed the account numbers and certain account information for ten (10) Whataburger gift cards, from a location outside the United States to a location in Baton Rouge, Louisiana, without authorization from the cards' issuer.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the defendant further agree that such facts are sufficient to support conviction of the offense to which the defendant has agreed to plead guilty. The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of sentencing. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation and any other relevant information.

### E. **BREACH AND ITS CONSEQUENCES**

#### 1. **Conduct Constituting Breach**

Any of the following actions by the defendant constitutes a material breach of this agreement:

    a.    failing to plead guilty to Count 1 of the Indictment at re-arraignment;

    b.    representing, directly or through counsel, to the United States or the Court that he will not plead guilty to Count 1 of the Indictment;

    c.      moving to withdraw his guilty plea;

    d.      filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

    e.      disputing or denying guilt of the offense to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

    f.      concealing or disposing of assets with the specific intent of shielding such assets from forfeiture;

    g.      providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

    h.      violating the terms of this agreement or the supplement to the plea agreement in any other manner.

**2.**    **Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement and the supplement to the plea agreement. In particular, the United States may prosecute the defendant for any criminal offense. In addition, any statements and information provided by the defendant pursuant to this agreement (or the supplement to the plea agreement) or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation. Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), the supplement to the plea agreement, statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty plea),

and statements made in the course of plea discussions. The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel). The defendant is not entitled to withdraw his guilty plea.

### 3. Procedure for Establishing Breach

The United States will provide written notice to the defendant or his attorney if it intends to be relieved of its obligations under the agreement and the supplement to the plea agreement as a result of a breach by the defendant. After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach. However, the United States will obtain a judicial determination regarding breach prior to using statements and information provided by the defendant or any act of producing documents or items by the defendant pursuant to this agreement or the supplement to the plea agreement, or any evidence or information derived therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case. The standard of proof in any proceeding to determine whether the plea agreement or the supplement to the plea agreement has been breached is preponderance of the evidence. To prove a breach, the United States may use (1) any and all statements of the defendant, (2) any and all statements of his counsel to the Court (including the United States Probation Office), and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

## F.    WAIVERS BY THE DEFENDANT

### 1.    Waiver of Trial Rights

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial. At a trial, the defendant would have the trial rights to be represented by counsel (and if necessary have the Court appoint counsel), to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a reasonable doubt. By waiving his right to a trial and pleading guilty, the defendant is waiving these trial rights.

### 2.    Waiver of Appeal and Collateral Remedies

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2). This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation. The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; (b) any sentence which is an upward departure pursuant to the Sentencing Guidelines; and (c) any non-Guidelines sentence or "variance" which is above the

guidelines range calculated by the Court. Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

### 3. Waiver of Statute of Limitations

The defendant hereby waives all defenses based on the applicable statutes of limitation as to all offenses charged in the Indictment and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement. The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement. The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### 4. Waiver of Speedy Trial Rights

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to all offenses charged in the Indictment. The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

## G.  EFFECT OF AGREEMENT

### 1.  Effective Date

This agreement and the supplement to the plea agreement are not binding on any party until both are signed by the defendant, defendant's counsel, and an attorney for the United States. Once signed by the defendant, his counsel, and an attorney for the United States, the agreement and the supplement are binding on the defendant and the United States.

### 2.  Effect on Other Agreements

This agreement incorporates the supplement to the plea agreement which will be filed under seal with the Court. In this district, the Court requires that a sealed supplement be filed with every plea agreement regardless of whether the defendant is cooperating. The supplement either states that the defendant is not cooperating or provides the terms of the defendant's agreement to cooperate. This plea agreement, along with the aforementioned supplement to the plea agreement, supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

### 3.  Effect on Other Authorities

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

### 4.  Effect of Rejection by Court

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement and the supplement to the plea agreement. If the Court rejects the plea agreement and the supplement, the plea agreement and the supplement are no longer binding on the parties and are not binding on the Court. If the Court rejects the plea agreement and the supplement, the

defendant will be given the opportunity to withdraw his plea and such withdrawal will not constitute a breach of the agreement. If the defendant does not withdraw his plea following rejection of the plea agreement and the supplement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

**H.    REPRESENTATIONS AND SIGNATURES**

**1.    By The Defendant**

I, Richard Verret, have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not been threatened, intimidated, pressured, or coerced in any manner. I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement and the supplement to the plea agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be. I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Indictment and discussed it with my attorney. I fully understand the nature of the charges, including the elements.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of Count 1 of the Indictment.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

_____    DATE: **8/23/2022**
Richard Verret
Defendant

2. **By Defense Counsel**

I have read the Indictment and this plea agreement and have discussed both with my client, Richard Verret, who is the defendant in this matter. I am satisfied that the defendant understands the agreement and the charges against him, including the elements. I am also satisfied that the defendant is entering into the agreement knowingly and voluntarily. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____    DATE: **8/23/2022**
J. Lane Ewing, Jr.
Counsel for Defendant

3. **By the United States**

We accept and agree to this plea agreement on behalf of the United States. This agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

_____    DATE: **8-8-22**
Ronald C. Gathe, Jr.
United States Attorney
Middle District of Louisiana

Richard Verret    Page 15    August 1, 2022

_____          DATE: 8/30/2022
Alan A. Stevens
Assistant United States Attorney
Middle District of Louisiana

_____          DATE: 08/30/2022
Harley W. Ferguson
Assistant United States Attorney
Middle District of Louisiana