```
                                                                    1

 1                    UNITED STATES DISTRICT COURT
 2                    MIDDLE DISTRICT OF LOUISIANA
 3
 4   UNITED STATES OF AMERICA      *      CRIMINAL ACTION
                                   *
 5   VERSUS                        *      NO. 22-22-SDD
                                   *
 6   RICHARD VERRET                *      JUNE 22, 2023
     * * * * * * * * * * * * * * *
 7
 8
 9                            SENTENCING
                BEFORE THE HONORABLE SHELLY D. DICK
10               UNITED STATES CHIEF DISTRICT JUDGE
11
12   APPEARANCES:
13   FOR THE GOVERNMENT:           UNITED STATES ATTORNEY'S OFFICE
                                   BY:  ALAN A. STEVENS, ESQ.
14                                      HARLEY FERGUSON, ESQ.
                                   777 FLORIDA STREET, SUITE 208
15                                 BATON ROUGE, LOUISIANA 70801

16   FOR THE DEFENDANT:            CAZAYOUX EWING, LLC
                                   BY:  J. LANE EWING, JR., ESQ.
17                                 257 MAXIMILLIAN STREET
                                   BATON ROUGE, LOUISIANA 70802
18
     OFFICIAL COURT REPORTER:      SHANNON L. THOMPSON, CCR
19                                 UNITED STATES COURTHOUSE
                                   777 FLORIDA STREET
20                                 BATON ROUGE, LOUISIANA 70801
                                   SHANNON_THOMPSON@LAMD.USCOURTS.GOV
21                                 (225)389-3567

22
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
23               COMPUTER-AIDED TRANSCRIPTION SOFTWARE
24
25
```

(JUNE 22, 2023)

**THE COURT:** OKAY. GOOD MORNING.

BE SEATED, PLEASE.

OKAY. CALL THE CASE, PLEASE.

**THE DEPUTY CLERK:** THIS IS CRIMINAL ACTION NO. 22-22, *UNITED STATES OF AMERICA VERSUS RICHARD VERRET*.

**MR. STEVENS:** GOOD MORNING, JUDGE.

ALAN STEVENS AND HARLEY FERGUSON ON BEHALF OF THE UNITED STATES.

**THE COURT:** GOOD MORNING.

**MR. EWING:** GOOD MORNING, YOUR HONOR.

LANE EWING ON BEHALF OF MR. VERRET, WHO IS PRESENT TODAY IN COURT.

**THE COURT:** GOOD MORNING.

MR. VERRET, WE ARE HERE FOR SENTENCING.

IF YOU WOULD APPROACH, PLEASE, SIR.

**THE DEFENDANT:** YES, YOUR HONOR.

**THE COURT:** OKAY. THERE IS A PENDING MOTION THAT THE COURT NEEDS TO TAKE UP UNDER SEAL. I AM GOING TO ASK THE COURTROOM SECURITY OFFICER TO PLEASE CLEAR THE COURTROOM. IF YOU ARE NOT A CASE AGENT OR ASSOCIATED WITH ONE OF THE COUNSEL IN THIS CASE, YOU WILL HAVE TO LEAVE THE COURTROOM.

**UNITED STATES MARSHAL:** YOUR HONOR, THAT GENTLEMAN IN THE BACK ROW IS A MARSHALS SERVICE EMPLOYEE.

**THE COURT:** OKAY. BACK FAR LEFT?

10:05

1       **UNITED STATES MARSHAL:** YES.

2       (WHEREUPON, A DISCUSSION WAS HELD AND ORDERED SEALED BY THE

3       COURT AND IS FILED IN A SEPARATE TRANSCRIPT.  AFTER WHICH THE

4       PROCEEDINGS RESUMED AS FOLLOWS.)

5       **THE COURT:** WE ARE BACK IN OPEN COURT AND ON THE

6       RECORD.

7       THERE WAS A WRITTEN PRESENTENCE INVESTIGATION

8       REPORT THAT WAS PREPARED BY THE UNITED STATES PROBATION OFFICE

9       TO ASSIST THE COURT IN SENTENCING.

10      DID YOU READ THE REPORT?

11      **THE DEFENDANT:** YES, I DID, YOUR HONOR.

12      **THE COURT:** DID YOU GO OVER IT CAREFULLY WITH MR.

13      EWING?

14      **MR. EWING:** YES.  WE DID GO OVER IT TOGETHER.

15      **THE COURT:** ALL RIGHT.  THERE ARE TWO OBJECTIONS TO

16      THE PSR, WHICH THE COURT WILL TAKE UP MOMENTARILY.

17      ARE THERE ANY FACTUAL CORRECTIONS, ALTERATIONS

18      OR ADDITIONS THAT NEED TO BE BROUGHT TO THE COURT'S ATTENTION?

19      **MR. STEVENS:** NONE FROM THE GOVERNMENT, JUDGE.

20      **MR. EWING:** NONE FROM MR. VERRET, YOUR HONOR.

21      **THE COURT:** ALL RIGHT, MR. EWING.  DO YOU WANT TO

22      PRESENT ANY ARGUMENT ON YOUR OBJECTIONS?  I DID READ YOUR MEMO,

23      BUT I AM HAPPY TO HEAR ANY ARGUMENT THAT YOU HAVE.

24      **MR. EWING:** SURE, YOUR HONOR.  AND AS I ACKNOWLEDGED

25      IN MY OBJECTIONS AND IN MY MEMO, THERE IS NO FIFTH CIRCUIT CASE

10:11
1 THAT'S ON POINT. THERE ARE CASES THAT WERE PROVIDED THAT COME
2 POST-*KISOR*, WHICH, YOU KNOW, IT WAS A SUPREME COURT DECISION
3 CONCERNING THE COMMENTARY OF THE GUIDELINES -- NOT THE
4 GUIDELINES IN PARTICULAR, BUT COMMENTARY -- AND HOW IT SHOULD
5 BE USED WHEN THERE'S AMBIGUITY UNDER -- WITH THE GUIDELINES
6 THEMSELVES. AND, OF COURSE, THERE'S A SIXTH CIRCUIT CASE
7 THAT -- I'M SORRY -- FIRST CIRCUIT --
8     **THE COURT:** NO. SIXTH CIRCUIT.
9     **MR. EWING:** SIXTH CIRCUIT. I'M SORRY. SIXTH CIRCUIT
10 CASE. AND THERE ALSO ARE, YOU KNOW, TWO OTHER CASES SINCE
11 *KISOR* IN OTHER CIRCUITS THAT SORT OF SUPPORT THE GUIDELINES
12 WHEN -- WHEN THE GUIDELINES ARE NOT AMBIGUOUS, THE COMMENTARY
13 SHOULDN'T BE RELIED UPON.
14     YOU KNOW, THERE IS ONE FOURTH CIRCUIT CASE THAT
15 SAYS OTHERWISE. AND THERE IS A FIFTH CIRCUIT CASE CURRENTLY
16 PENDING, AS YOUR HONOR, I'M SURE, KNOWS. BUT WE ARGUE THAT IN
17 THIS CASE IT'S SQUARELY ON POINT WITH *RICCARDI* IN THE SENSE
18 THAT WE KNOW WHAT THE LOSS AMOUNT IS. AND THE GOVERNMENT, I
19 BELIEVE, AGREES THAT THE $500 MINIMUM AMOUNT SEVERELY
20 OVERSTATES THE LOSS. AND WE SUGGEST, YOUR HONOR, THAT IN LIGHT
21 OF *KISOR*, THE OBJECTION SHOULD BE RULED IN OUR FAVOR.
22     **THE COURT:** MR. STEVENS, DO YOU WANT TO ADD ANYTHING
23 TO THAT?
24     **MR. STEVENS:** JUDGE, ALL I'D SAY -- I MEAN, WE
25 RECOGNIZE THAT THE NOTE SAYS THAT THE LOSS SHALL BE NOT LESS

10:12  THAN $500. IN THIS PARTICULAR CASE -- AND I GUESS MY ARGUMENT IS NOT A LEGAL ARGUMENT AS MUCH AS A FACTUAL ARGUMENT. BUT IN THIS PARTICULAR CASE, WE KNEW THAT THAT WOULD OVERSTATE THE SERIOUSNESS OF THE OFFENSE; AT LEAST THAT WAS OUR POSITION. AND WE FELT THAT THE RIGHT THING TO DO WAS TO COMMUNICATE THAT IN SOME WAY TO THE DEFENSE AND TO THE COURT, BECAUSE IF THE DEFENDANT HAD SOLD EVERY SINGLE CARD THAT HE HAD AVAILABLE FOR SALE AT THE TIME HE WAS ARRESTED, THE TOTAL VALUE OF ALL OF THOSE CARDS -- HUNDREDS OF THOUSANDS OF CARDS -- WOULD HAVE STILL ONLY BEEN $22 MILLION. AND SO WE COULDN'T COME IN AND ASK THE COURT TO SENTENCE THE DEFENDANT -- WE DIDN'T FEEL LIKE WE COULD COME IN AND ASK THE COURT TO SENTENCE THE DEFENDANT ON THE BASIS OF SOME 280-SOMETHING-MILLION-DOLLAR LOSS FIGURE.

YOU KNOW, THE WAY WE, YOU KNOW, MADE THAT POINT -- IN HINDSIGHT I MAYBE COULD HAVE DONE IT DIFFERENTLY. BUT WE DO THINK THAT THE LANGUAGE THAT WE PUT IN THE PLEA AGREEMENT THAT URGES THE COURT TO ADOPT A LOSS BETWEEN THE NINE AND A HALF AND THE 22 MILLION -- I MEAN, AT THE TIME WE FELT LIKE THAT WAS THE BEST WAY TO COMMUNICATE OUR POSITION IN THIS CASE.

DOES THAT HELP AT ALL? I DON'T KNOW THAT IT DOES.

**THE COURT:** WELL, TELL ME ABOUT RESTITUTION, BECAUSE I UNDERSTAND THAT THERE IS NO CALCULATION ON RESTITUTION BECAUSE THE CALCULATION WAS NEAR IMPOSSIBLE. IS THAT RIGHT?

10:13  1    **MR. STEVENS:** YES, IT IS.  AND THAT WAS FRUSTRATING.
2    I'VE HAD THIS CASE FOR YEARS, SO THAT'S BEEN FRUSTRATING TO ME
3    AND THE AGENT.  BUT WHAT I LEARNED -- AND ONCE IT WAS EXPLAINED
4    TO ME, IT MADE SENSE.  YOU KNOW, WHEN YOU GO TO CVS AND BUY A
5    GIFT CARD TO STARBUCKS FOR $25 --
6            **THE COURT:** STARBUCKS GOT THE MONEY.
7            **MR. STEVENS:** THEY DID.  I MEAN, THE VICTIM IS THE
8    PERSON WHO HAD THAT GIFT CARD --
9            **THE COURT:** RIGHT.
10           **MR. STEVENS:** -- WHO THINKS HE HAS $25 AND DOESN'T,
11   BECAUSE MR. VERRET HAS SOLD THAT GIFT CARD.  BUT WE COULDN'T
12   IDENTIFY ANY OF THOSE PEOPLE BECAUSE STARBUCKS AND CVS DON'T
13   KEEP RECORDS IN THE VAST, VAST MAJORITY OF CASES.  THE
14   INDIVIDUALS, THE RETAILERS SELLING THESE CARDS DON'T KNOW WHO
15   IS BUYING THEM, UNLESS YOU LOG IN AND REGISTER, WHICH HARDLY
16   ANYONE DOES.
17           **THE COURT:** RIGHT.
18           **MR. STEVENS:** SO THERE ARE VICTIMS.  AND THE VICTIMS,
19   I THINK, FOR THE MOST PART ARE THE INDIVIDUAL CARDHOLDERS, BUT
20   WE WERE NOT ABLE TO IDENTIFY THEM.  AND WE WOULD HAVE DONE
21   EVERYTHING WE REASONABLY COULD TO FIND THEM, BUT WE COULDN'T.
22           **THE COURT:** RIGHT.  SO IT ASSUMES THAT THE VICTIMS
23   KNOW THAT THEY ARE VICTIMS.  YOU KNOW, IT ASSUMES THAT -- FOR
24   EXAMPLE, IF I HAVE A $25 STARBUCKS GIFT CARD OR I BOUGHT -- NOW
25   YOU CAN'T EVEN HARDLY BUY STARBUCKS WITHOUT LOADING YOUR CARD.

10:15   1  YOU HAVE TO LOAD YOUR CARD.  AND IF I DIDN'T KNOW THAT I HAD
        2  "X" NUMBER OF DOLLARS ON MY CARD OR I FORGOT AND ALL OF A
        3  SUDDEN NOW I DON'T HAVE ANY, AM I REALLY A VICTIM?  MAYBE
        4  NOT IF -- AND SO THAT IS PART OF THE PROBLEM IS THAT WE
        5  REALLY -- THE LOSS AMOUNT IS A VERY AMORPHOUS THING.
        6           **MR. STEVENS:**  WELL, JUDGE, I WOULD ARGUE, IF YOU HAD
        7  A STARBUCKS GIFT CARD THAT YOU PAID FOR, WHETHER YOU PAID
        8  STARBUCKS THROUGH THE APP OR CVS WHERE YOU BOUGHT THE CARD, I
        9  MEAN, IF THIS DEFENDANT SOLD YOUR ACCOUNT FOR PENNIES ON THE
       10  DOLLAR AND SOMEONE ELSE USED IT, YOU ARE A VICTIM.  BUT I THINK
       11  THE ISSUE YOU'RE HITTING ON IS YOU MAY NOT KNOW THAT YOU ARE A
       12  VICTIM UNTIL SOME LENGTHY PERIOD OF TIME AFTER THE CRIME TAKES
       13  PLACE.
       14           **THE COURT:**  RIGHT.
       15           **MR. STEVENS:**  BUT THAT'S NOT TO SAY THAT YOU ARE NOT
       16  A VICTIM.
       17           **THE COURT:**  RIGHT.
       18           **MR. STEVENS:**  AND THAT YOU WEREN'T IMPACTED.
       19           **THE COURT:**  AGREED.  BUT HOW TO QUANTIFY WHAT THE
       20  LOSS IS --
       21           **MR. STEVENS:**  I AGREE.  AND THAT'S PART OF THE --
       22           **THE COURT:**   -- THAT'S EXTREMELY DIFFICULT.
       23           **MR. STEVENS:**  YES.  AND SO, I MEAN, I THINK PROBABLY
       24  EVERYONE IN THIS COURTROOM AGREES, YOU KNOW, THE GUIDELINES
       25  PROBABLY DO SAY THAT THE LOSS -- THE INTENDED LOSS IS

10:16 

1  280-SOMETHING MILLION DOLLARS.  AND I CAN'T STAND UP HERE AND
2  ARGUE IN GOOD CONSCIENCE THAT THAT SHOULD BE THE RELEVANT
3  NUMBER FOR SENTENCING PURPOSES.  BUT WE DO BELIEVE THAT A LOSS
4  FIGURE BETWEEN THE NINE AND A HALF AND 22 -- I MEAN, THAT'S A
5  REASONABLE APPROXIMATION BASED ON THE VALUE OF ALL THESE CARDS
6  THAT HE HAD FRAUDULENTLY OBTAINED THAT HE WAS TRYING TO SELL.
7      **THE COURT:**  WELL, THE COURT IS GOING TO DENY THE
8  OBJECTION, BECAUSE THE COURT BELIEVES AND FINDS THAT THE UNITED
9  STATES PROBATION OFFICER APPLIED THE GUIDELINES AND THE
10 COMMENTS WITH FIDELITY.
11     NOW, DOES THE COURT -- I TEND TO AGREE WITH THE
12 SIXTH CIRCUIT'S ANALYSIS WHEN WE BEGIN TO ELEVATE THE COMMENTS
13 TO THE GUIDELINES TO SOME BINDING MANDATORY APPLICATION WHEN
14 THERE IS NO CONFLICT OR AMBIGUITY IN THE GUIDELINE ITSELF.
15 HOWEVER, I DON'T HAVE ANY FIFTH CIRCUIT GUIDANCE ON THAT.  AND
16 THE COURT DOES, HOWEVER, FIND THAT THE GUIDELINES AS APPLIED BY
17 THE COMMENT -- AND THE COMMENT SAYS "SHALL USE A $500 MINIMUM
18 VALUE FOR THE NUMBER OF ACCESS DEVICES," WHICH RESULTS, IN THIS
19 COURT'S VIEW, IN A LOSS AMOUNT THAT'S MORE THAN TEN TIMES WHAT
20 THE ACTUAL DOCUMENTED LOSS AMOUNT IS.
21     I MEAN, THE ACTUAL DOCUMENTED LOSS AMOUNT IS
22 SOME $22,000.  BUT YET APPLYING WITH FIDELITY THE COMMENT,
23 WHICH HAS MANDATORY LANGUAGE IN IT, RESULTS IN A MORE THAN TEN
24 TIMES THAT AMOUNT, A $284,000 LOSS AMOUNT, WHICH THEN DRIVES
25 THE OFFENSE LEVEL.

10:18  1        THE COURT: FINDS THAT THE OFFENSE LEVEL IN THIS
      2  CASE, AS REQUIRED BY THE UNITED STATES PROBATION OFFICERS -- AS
      3  I MENTIONED, FIDELIUS APPLICATION OF THE GUIDELINES --
      4  OVERSTATES THE CRIMINAL INTENT IN THE OFFENSE. THE COURT IS
      5  GOING TO DO -- FOR THAT REASON, IS GOING TO GRANT A DEPARTURE
      6  BECAUSE THE LEVEL IS OVERSTATED -- OVERSTATES THE SERIOUSNESS
      7  OF THE OFFENSE. AS MENTIONED, THE DEFENDANT'S LOSS OR CONDUCT
      8  CAUSED BY THE LOSS OF ABOUT $22,588.87 -- 871, WHICH REPRESENTS
      9  THE STORE VALUE OF THE FRAUDULENTLY OBTAINED ACCOUNTS.
     10  HOWEVER, 2B1.1 -- AND SPECIFICALLY JUST THE COMMENT,
     11  (N.3(F)(I) -- INCREASES THAT LOSS TO $284,780 -- 780 --
     12  $284,780.
     13        **MR. STEVENS:** JUDGE, I --
     14        **THE COURT:** NO. $284 MILLION. IT'S WAY MORE THAN
     15  TEN TIMES.
     16        **MR. STEVENS:** WELL, THE COURT HAS USED THE WORD
     17  "THOUSAND" A FEW TIMES. AND I THINK IN EVERY INSTANCE YOU
     18  MEANT MILLIONS.
     19        **THE COURT:** I DID. 22 MILLION.
     20        **MR. STEVENS:** BUT IT'S STILL TEN TIMES. YOU ARE
     21  ABSOLUTELY RIGHT.
     22        **THE COURT:** IT IS STILL TEN TIMES. YOU ARE RIGHT.
     23  AND THE COURT -- YES. NOW YOU SEE MY NOT SUPERPOWER, WHICH IS
     24  WHAT YOUR SUPERPOWER IS; MATH. NOT MINE.
     25               $22,000,000 IS THE TOTAL STORE VALUE.

10:19  1  $284,000,000 IS THE LOSS AMOUNT THAT WOULD BE REQUIRED BY
      2  2B1.1.  THE COURT FINDS THAT THAT IS -- IT SUBSTANTIALLY
      3  OVERSTATES THE OFFENSE CONDUCT, RESULTING IN AN EIGHT-LEVEL
      4  INCREASE TO HIS OFFENSE LEVEL.
      5           THE COURT IS GOING TO GRANT A DEPARTURE OF AN
      6  ADDITIONAL THREE LEVELS, FINDING THAT THE OFFENSE LEVEL IS
      7  OVERSTATED BY THE GUIDELINE APPLICATION.  HOWEVER, THE COURT
      8  DOES -- IF I'VE NOT ARTICULATED THIS CLEARLY, IS DENYING THE
      9  OBJECTION BECAUSE THE COURT FINDS THAT THE UNITED STATES
     10  PROBATION OFFICE DID APPLY THE GUIDELINES AS REQUIRED AND AS
     11  WRITTEN WITHOUT ANY FURTHER FIFTH CIRCUIT GUIDANCE,
     12  NOTWITHSTANDING THE FACT THAT THE SIXTH CIRCUIT MAKES A LOT OF
     13  SENSE.
     14           OKAY.  SO THAT IS THE RULING ON THE OBJECTION.
     15      **MR. EWING:**  YOUR HONOR, TO THE EXTENT THAT SOMETHING
     16  MIGHT HAPPEN IN THE FIFTH CIRCUIT, WE'D LIKE TO NOTE OUR
     17  OBJECTION, PLEASE, TO THE COURT'S RULING.
     18      **THE COURT:**  SO NOTED.
     19      **MR. EWING:**  THANK YOU.
     20      **THE COURT:**  ALL RIGHT.  THE COURT WILL ACCEPT THE
     21  PLEA AGREEMENT.  THE COURT IS SATISFIED THAT THE AGREEMENT
     22  ADEQUATELY REFLECTS THE SERIOUSNESS OF THE ACTUAL OFFENSE
     23  CONDUCT, AND THAT ACCEPTING THE PLEA AGREEMENT WILL NOT
     24  UNDERMINE THE STATUTORY PURPOSES OF SENTENCING.
     25           MR. VERRET, YOU ARE ADVISED THAT THE COURT'S

10:21

SENTENCE WILL BE CONSISTENT WITH THE TERMS OF YOUR PLEA AGREEMENT.

THE COURT WILL ADOPT THE UNDISPUTED FACTUAL STATEMENTS AND THE GUIDELINE APPLICATIONS RECOMMENDED BY THE PROBATION OFFICE, AS REFLECTED IN THE PRESENTENCE INVESTIGATION REPORT. THE COURT FINDS THAT GIVEN A THREE-LEVEL DOWNWARD DEPARTURE FOR OVERSTATEMENT OF THE OFFENSE CONDUCT, THE GUIDELINE CALCULATION IS AN OFFENSE LEVEL OF 25; A CRIMINAL HISTORY CATEGORY OF I, RESULTING IN A GUIDELINE RANGE OF IMPRISONMENT OF 57 TO 71 MONTHS; PROBATION IS INELIGIBLE; A PERIOD OF SUPERVISED RELEASE OF ONE TO THREE YEARS; A FINE IN THE SUM OF $20,000 TO $200,000; RESTITUTION IS NOT APPLICABLE; AND A SPECIAL ASSESSMENT FEE OF $100.

OKAY. THE COURT HAS READ THE SENTENCING MEMORANDUM AND REVIEWED THE VARIOUS CERTIFICATES THAT WERE PROVIDED BY COUNSEL AND, ADDITIONALLY, SEVERAL LETTERS IN SUPPORT OF MR. VERRET.

MR. VERRET, I HAVE READ ALL OF THOSE AND HAVE CONSIDERED THOSE. IS THERE ANYTHING THAT YOU WISH TO SAY BEFORE SENTENCE IS IMPOSED, SIR? YOU MAY TAKE YOUR TIME.

**THE DEFENDANT:** YEAH. I WROTE A LETTER.

**THE COURT:** OKAY. HE WILL GET THAT FOR YOU.

**THE DEFENDANT:** OKAY. GOOD MORNING, YOUR HONOR.

**THE COURT:** GOOD MORNING, SIR.

**THE DEFENDANT:** WHEN I GOT ARRESTED, IT WAS LIKE A

10:22

SLAP IN THE FACE, A NIGHTMARE. IT MADE ME REALIZE HOW BAD MY ACTIONS WERE HURTING PEOPLE AND BREAKING MY LOVED ONES' HEARTS. I NEVER INTENDED TO HURT ANYONE. I'M NOT A CAREER CRIMINAL. I HAVE BEEN WORKING HARD ALL MY LIFE. I'M A LOVING, CARING, GENEROUS PERSON, ALWAYS READY TO HELP THOSE IN NEED. I HAVE NEVER DID ANYTHING LIKE THIS BEFORE. THIS IS, WITHOUT A DOUBT, THE BIGGEST MISTAKE OF MY LIFE. THERE IS NOTHING I REGRET MORE.

I KNOW THIS MIGHT SOUND A BIT UNUSUAL, BUT I WANT TO THANK MR. STEVENS AND HIS TEAM FOR GIVING ME THE OPPORTUNITY TO MAKE THINGS RIGHT AND MAKE SURE IT NEVER HAPPENS AGAIN. I HAVE NOTHING BUT RESPECT FOR THIS MAN.

AFTER THIS TRAUMA, I KNOW I WILL NEED HELP PHYSICALLY AND MENTALLY. I ALREADY TOLD MY WIFE ABOUT SEEING A PSYCHOLOGIST. AND I KNOW MY LOVED ONES WILL BE THERE TO SUPPORT ME.

WITH THE WILDFIRES IN CANADA AND EVERYTHING HAPPENING IN THIS WORLD, TOMORROW IS NOT GUARANTEED. TWO CLOSE RELATIVES PASSED AWAY ALREADY.

I AM ASKING YOU, YOUR HONOR, TO GIVE ME A SECOND CHANCE. I BEG YOU FOR YOUR MERCY. I HOPE YOU CAN SEE I'M NOT A BAD PERSON.

THANK YOU AND GOD BLESS YOU.

**THE COURT:** OKAY. THANK YOU, SIR.

MR. EWING, IS THERE ANYTHING YOU WISH TO ADD,

10:24 SIR?

**MR. EWING:** YOUR HONOR, BRIEFLY. FIRST, THANK YOU FOR THE DEPARTURE BASED ON THE OVERSTATEMENT OF THE SERIOUSNESS OF THE OFFENSE.

RESPECTFULLY, YOUR HONOR, I WOULD SUGGEST -- AND I DO THIS WITH HESITATION BECAUSE OF THE COURT'S GENEROSITY ALREADY WITH THAT DEPARTURE, BUT EVEN A SENTENCE WITHIN THE 57 TO 71 MONTHS, YOUR HONOR, I BELIEVE IS SUBSTANTIAL, CONSIDERING THE FACTORS ENUMERATED IN 3553.

I'D ALSO LIKE TO CALL TO THE COURT'S ATTENTION THAT MR. VERRET PLED TO A COUNT THAT HAD AN ACCESSORY MAXIMUM OF TEN YEARS. AND SO THAT SORT OF UNDERVALUES THE 5K AND ALSO THE DEPARTURE, BECAUSE, YOU KNOW, NORMALLY YOU WOULD START OFF AT A GUIDELINE RANGE AT TEN YEARS AND WORK BACKWARDS. IN THIS CASE WE DIDN'T DO THAT. AND SO, YOUR HONOR, RESPECTFULLY I STICK TO THE NUMBERS THAT I SUBMITTED IN MY SENTENCING MEMORANDUM. I BELIEVE THAT CONSIDERING THAT MR. VERRET HAS NO CRIMINAL HISTORY; HE COMMITTED A NONVIOLENT CRIME; HE HAS A WONDERFUL FAMILY SUPPORT SYSTEM; HE'S BEEN GAINFULLY EMPLOYED FOR, I BELIEVE, 13 YEARS PRIOR TO THIS; HE'S BEEN WITHOUT HIS FAMILY IN WEST BATON ROUGE, WHO ARE ALL STILL IN QUEBEC, CANADA; HE'S ACCEPTED RESPONSIBILITY FROM DAY ONE -- LITERALLY, THE DAY THAT HE WAS ARRESTED, HE ACCEPTED RESPONSIBILITY FOR WHAT HE'S DONE -- HE'S A VALUABLE MEMBER OF THE COMMUNITY. AND HE HAS I BELIEVE SINCERE PLANS GOING FORWARD WHEN HE DOES SERVE

10:25
1 HIS SENTENCE TO DO GOOD FOR THE COMMUNITY AND TO MAKE THIS
2 RIGHT. IT'S A MISTAKE THAT I'M VERY CONFIDENT HE WILL NOT MAKE
3 AGAIN. AND, YOUR HONOR, I SUGGEST THAT A BELOW-GUIDELINE
4 SENTENCE WOULD BE APPROPRIATE IN THIS CASE. THANK YOU.
5       **THE COURT:** OKAY. THANK YOU, SIR.
6       MR. STEVENS.
7       **MR. STEVENS:** JUDGE, I AGREE WITH A LOT OF WHAT MR.
8 EWING -- NOT ALL, BUT A LOT OF WHAT MR. EWING SAID. AND I'VE
9 GOTTEN TO KNOW MR. VERRET A LITTLE BIT. HE'S -- I LIKE HIM AND
10 HE'S NOT A BAD PERSON AT ALL. BUT WE DO BELIEVE THAT THE
11 SENTENCE THAT THE DEFENDANT HAS REQUESTED, THE 30 TO 37 MONTHS,
12 WE THINK THAT'S TOO LOW.
13       I HAD -- IN MY NOTES I WAS KIND OF PLANNING TO
14 AIM FOR 58, 59 MONTHS, SOMEWHERE IN THERE, WHICH WOULD HAVE
15 BEEN A -- THE PERCENTAGE REDUCTION FROM THE MID-POINT OF THE
16 GUIDELINE RANGE THAT WE'VE TALKED ABOUT, THE NINE AND A HALF TO
17 22 MILLION. AND THAT'S AWFULLY CLOSE TO WHAT THE COURT HAS
18 COME UP WITH JUST NOW. AND WE THINK A SENTENCE CLOSER TO THOSE
19 RANGES IS MORE APPROPRIATE IN THIS CASE, JUDGE. I MEAN, IT WAS
20 A SOPHISTICATED CRIME. IT TOOK ME A WHILE TO JUST FIGURE OUT
21 HOW TO GO ABOUT INVESTIGATING THIS CRIME, PROBABLY TO THE
22 AGENCY'S FRUSTRATION. BUT IT WAS A SOPHISTICATED CRIME. IT
23 TOOK A LOT OF PLANNING AND A LOT OF, YOU KNOW, EXPERTISE. WE
24 KNOW IT WAS VERY PROFITABLE.
25       AND, JUDGE, YOU KNOW FROM THE FORFEITURE

10:27
1. PLEADINGS THAT, YOU KNOW, OUR VERY, VERY CONSERVATIVE ESTIMATE
2. OF HIS ACTUAL PROFITS FROM THIS SCHEME IS WELL OVER $800,000.
3. AND THAT'S ANOTHER WAY TO LOOK AT THE FACT THAT IT -- AT LEAST
4. IN OUR VIEW THERE OUGHT TO BE A PRETTY SIGNIFICANT PRISON
5. SENTENCE TO REFLECT THE SERIOUSNESS OF THE OFFENSE.  GRANTED,
6. THIS ISN'T THE LARGEST FRAUD CASE IN THE HISTORY OF THE
7. UNIVERSE, WHICH MAYBE THE GUIDELINES WOULD HAVE SUGGESTED IT
8. IS, BUT IT'S STILL AN AWFULLY SERIOUS CRIME, AND THE SENTENCE
9. OUGHT TO REFLECT THAT AND DETER OTHERS FROM GETTING ONLINE AND
10. ESSENTIALLY DOING THE SAME THING THAT THIS DEFENDANT DID.  AND
11. SO THAT'S WHY WE THINK THE 30 TO 37 IS TOO LOW, JUDGE, WHEN YOU
12. CONSIDER THE 3553(A) FACTORS.  THANK YOU.
13. **THE COURT:** THE COURT HAS STRUGGLED WITH THIS CASE,
14. LARGELY BECAUSE THE GUIDELINES PUT IT SO FAR OUTSIDE OF, IN
15. THIS COURT'S VIEW, THE HEARTLAND OF THE CONDUCT THAT IT WAS --
16. THAT IS SOUGHT TO BE APPROPRIATELY BUT NOT EXCESSIVELY
17. PUNISHED.  THE COURT THINKS THAT THE GUIDELINE REACHED IN THIS
18. CASE OF 57 TO 71 MONTHS IS FAIR AND JUSTIFIED UNDER THE FACTS
19. AND CIRCUMSTANCES.
20. LOOKING BACK AT THE FACTUAL BASIS, THIS WAS A
21. SCHEME THAT WENT ON FROM 2018 TO 2022.  NOTABLY, THE FORFEITURE
22. AMOUNT IN EXCESS OF $800,000 IS SIGNIFICANT.  AND
23. NOTWITHSTANDING THE COURT'S MATH CHALLENGES EARLIER, A
24. $22 MILLION ACTUAL LOSS IS ALSO VERY SIGNIFICANT.  UNDER THOSE
25. CIRCUMSTANCES, THE COURT BELIEVES THAT A GUIDELINE SENTENCE --

10:29  1  AND FINDS THAT A GUIDELINE SENTENCE IS APPROPRIATE IN THIS
       2  CASE.
       3            THE COURT HAS CONSIDERED THE SENTENCING
       4  GUIDELINES AND THE SENTENCING FACTORS -- AND THE COURT, AS
       5  MENTIONED, IS IMPRESSED WITH NOT ONLY THE CHARACTER LETTERS BUT
       6  THE CERTIFICATES THAT HAVE BEEN SUBMITTED IN SUPPORT OF
       7  SENTENCING.
       8            BUT ON THE OTHER HAND, YOU HAVE A VERY SERIOUS
       9  LOSS AMOUNT, A VERY, FOR LACK OF A BETTER WORD, COMPLICATED
      10  SCHEME THAT WENT ON FOR A LENGTH OF TIME, INDICATING TO THE
      11  COURT THAT CERTAINLY MR. VERRET IS A VERY SMART MAN.
      12            AND, MR. VERRET, YOUR STATEMENT THAT YOU ARE NOT
      13  A BAD MAN, THAT'S ABSOLUTELY TRUE.  YOU JUST MADE A REALLY BAD
      14  MISTAKE AND YOU CONTINUED IT WITH SOME SUCCESS -- SOME
      15  SIGNIFICANT SUCCESS FOR A LONG PERIOD OF TIME.
      16            AND SO THE COURT FINDS THAT THE GUIDELINE OF 57
      17  TO 71 MONTHS IS AN APPROPRIATE GUIDELINE RANGE AFTER HAVING
      18  MADE THE DEPARTURE.
      19            THE COURT HAS CONSIDERED THE SENTENCING FACTORS
      20  IN 18 U.S. CODE § 3553(A), AND IT IS THE JUDGMENT OF THIS COURT
      21  THAT THE DEFENDANT, RICHARD VERRET, A/K/A LUXURY 187, MIAMI
      22  24K, FABOLOSO_1, CASSIE CASH, AND SHAWN WHITNACK OR WHITENACK,
      23  IS HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS TO
      24  BE IMPRISONED FOR A TERM OF 57 MONTHS OF IMPRISONMENT.
      25            IT IS RECOMMENDED TO THE BUREAU OF PRISONS THAT

10:30  1  MR. VERRET BE HOUSED IN A FACILITY CAPABLE OF PROVIDING HIM
2  WITH COGNITIVE BEHAVIORAL TREATMENT.
3  PURSUANT TO SENTENCING GUIDELINE 5D1.1C, THE
4  COURT WILL NOT IMPOSE A TERM OF SUPERVISED RELEASE.  HOWEVER,
5  IF ORDERED DEPORTED BY THE UNITED STATES IMMIGRATION COURT OR
6  OTHER AUTHORITY, MR. VERRET, YOU SHALL NOT REENTER THE UNITED
7  STATES UNLESS AUTHORIZED BY THE DEPARTMENT OF HOMELAND
8  SECURITY, THE BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENTS.
9  THE COURT FINDS MR. VERRET DOES NOT HAVE THE
10  ABILITY TO PAY A FINE AND WILL WAIVE A FINE IN THIS CASE.
11  IT IS ORDERED THAT YOU PAY TO THE UNITED STATES
12  A SPECIAL ASSESSMENT FEE OF $100, WHICH FEE IS DUE IMMEDIATELY.
13  PURSUANT TO 18 U.S. CODE § 982(A)(2) AND
14  1029(C)(1)(C), THE DEFENDANT SHALL FORFEIT TO THE UNITED STATES
15  ANY PROPERTY, REAL OR PERSONAL, WHICH CONSTITUTES OR IS DERIVED
16  FROM PROCEEDS TRACEABLE TO THE OFFENSE, INCLUDING BUT NOT
17  LIMITED TO A FORFEITURE MONEY JUDGMENT IN THE AMOUNT OF
18  $812,893.60, REPRESENTING THE AMOUNT OF GROSS PROCEEDS FROM THE
19  OFFENSE CONDUCT.
20  ARE THERE ANY MOTIONS BY THE GOVERNMENT?
21  **MR. STEVENS:**  ONLY TO DISMISS THE REMAINING COUNTS OF
22  THE INDICTMENT, JUDGE, PURSUANT TO THE PLEA AGREEMENT, WHICH I
23  BELIEVE YOU HAVE ALREADY ACCEPTED.
24  **THE COURT:**  CORRECT.  THE PLEA AGREEMENT HAS BEEN
25  PREVIOUSLY ACCEPTED.

10:32

1  COUNTS 2 THROUGH 6 OF THE INDICTMENT ARE
2  DISMISSED ON MOTION OF THE GOVERNMENT.
3  MR. VERRET, YOU DO HAVE A RIGHT TO APPEAL, TO
4  THE EXTENT THAT YOU HAVE NOT WAIVED THAT IN YOUR PLEA
5  AGREEMENT. IF YOU CHOOSE TO APPEAL, YOU MUST DO SO WITHIN 15
6  DAYS -- IS IT 15? GOSH, I HAVEN'T DONE THIS IN THREE WEEKS --
7  14 DAYS FROM THE DATE THAT THE JUDGMENT IS ENTERED. IF YOU DO
8  NOT APPEAL WITHIN 14 DAYS OF THE DATE THAT THE COURT ENTERS
9  JUDGMENT, YOU WILL LOSE YOUR APPEAL RIGHTS. THE GOVERNMENT
10 LIKEWISE HAS A RIGHT TO APPEAL. IN EITHER EVENT, IF YOU CANNOT
11 AFFORD COUNSEL AND NEED COUNSEL, COUNSEL WILL BE APPOINTED FOR
12 YOU. IF YOU CANNOT PAY THE FILING FEES ASSOCIATED WITH EITHER
13 TAKING OR DEFENDING AN APPEAL, THE CLERK OF COURT WILL ACCEPT
14 YOUR FILINGS WITHOUT THE PAYMENT OF FEES.
15 DO YOU UNDERSTAND?
16 **THE DEFENDANT:** YES, YOUR HONOR.
17 **THE COURT:** IS THERE ANYTHING FURTHER BY EITHER
18 PARTY?
19 **MR. STEVENS:** NOT FROM THE GOVERNMENT, JUDGE.
20 **THE COURT:** OKAY.
21 **MR. EWING:** NOTHING FROM MR. VERRET, YOUR HONOR.
22 THANK YOU.
23 **THE COURT:** OKAY. I DO WISH YOU THE BEST OF LUCK,
24 MR. VERRET, AND I HOPE THAT YOU WILL TAKE ADVANTAGE OF THE
25 COGNITIVE BEHAVIORAL TREATMENT THAT IS OFFERED TO YOU AT THE

```
10:33  1  BUREAU OF PRISONS.
       2              IF THERE IS NOTHING FURTHER, WE WILL STAND IN
       3  RECESS.
       4         MR. EWING:  THANK YOU.
       5         THE DEFENDANT:  THANK YOU, YOUR HONOR.
       6         THE LAW CLERK:  ALL RISE.
       7              COURT IS IN RECESS.
       8           (WHEREUPON, THIS MATTER WAS CONCLUDED.)
       9                          * * *
      10                       **CERTIFICATE**
      11      I, SHANNON THOMPSON, CCR, OFFICIAL COURT REPORTER FOR THE
      12  UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF LOUISIANA,
      13  CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO
      14  THE BEST OF MY ABILITY AND UNDERSTANDING, FROM THE RECORD OF
      15  PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
      16
      17                          *Shannon Thompson*
      18                          SHANNON THOMPSON, CCR
      19                          OFFICIAL COURT REPORTER
      20
      21
      22
      23
      24
      25
```